# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Decided July 20, 2012
Reissued December 19, 2012

No. 05-1097

STATE OF NEW JERSEY, ET AL.,
PETITIONERS

v.

ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENT

UTILITY AIR REGULATORY GROUP, ET AL.,
INTERVENORS

———

Consolidated with 05-1104, 05-1116, 05-1118, 05-1158,
05-1159, 05-1160, 05-1162, 05-1163, 05-1164, 05-1167,
05-1174, 05-1175, 05-1176, 05-1183, 05-1189, 05-1263,
05-1267, 05-1270, 05-1271, 05-1275, 05-1277, 06-1211,
06-1220, 06-1231, 06-1287, 06-1291, 06-1293, 06-1294

———

On Tribal Movants' Motion for Costs of Litigation Including
Attorney Fees

———

*Riyaz A. Kanji* and *David A. Giampetroni* filed the
motion for costs of litigation including attorney fees for
intervenors for petitioners Tribal Movants.

*Matthew R. Oakes*, Trial Attorney, U.S. Department of Justice, filed the opposition for respondent Environmental Protection Agency.

Before: ROGERS, TATEL, and BROWN, *Circuit Judges*.

Opinion for the Court filed PER CURIAM.

Concurring opinion filed by *Circuit Judge* BROWN.

PER CURIAM: In our earlier decision in this case, *New Jersey v. EPA*, 663 F.3d 1279 (D.C. Cir. 2011), we held that Movants, a group of Native American tribes and tribal associations who intervened on behalf of petitioners in the underlying Clean Air Act litigation, were entitled to fees and costs under section 307(f) of the Act. When the parties were unable to agree on the amount of fees, Movants filed an updated motion seeking $369,027.25, including compensation for 1,181 hours of work and for costs. For the reasons set forth below, we agree with EPA that the fee request is excessive and thus award substantially less than Movants seek.

Movants "bear the burden of demonstrating the reasonableness of each element of their fee request." *Am. Petroleum Inst. v. EPA*, 72 F.3d 907, 912 (D.C. Cir. 1996) (*API*). To calculate a reasonable fee, we use the lodestar method, multiplying a reasonable rate by the reasonable number of hours. *See id.*; *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). EPA does not object to Movants' proposed hourly rates, and in order to simplify things recommends that we use a flat rate of $305.125 (an average it calculates by dividing the total award Movants seek by the number of hours they claim). Because Movants do not object, we shall base our award on $305.125 per hour. Moving on to

the second issue, the reasonable number of hours, we must closely scrutinize billing entries "in light of the 'reasonable' and 'appropriate' standards set forth in the statute," *Michigan v. EPA*, 254 F.3d 1087, 1090 (D.C. Cir. 2001) (per curiam) (quoting 42 U.S.C. § 7606(f)), recognizing that "items of expense or fees that may not be unreasonable between a first class law firm and a solvent client[] are not always supported by indicia of reasonableness sufficient to allow us justly to tax the same against the United States." *API*, 72 F.3d at 912 (alteration and internal quotation marks omitted). "[S]upporting documentation must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended[.]" *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004) (internal quotation marks omitted). Where "petitioners have not carried their burden," this court "make[s] adjustments," reducing the award as appropriate. *API*, 72 F.3d at 912; *see also Envtl. Def. Fund, Inc. v. EPA*, 672 F.2d 42, 54 (D.C. Cir. 1982) ("[A]ppellate judges are themselves experts in assessing the reasonableness of an attorney's fee award, and . . . the appellate court may independently review the record, or itself set the fee." (omission and internal quotation marks omitted)).

With these principles in mind, we consider the reasonableness of the hours Movants seek for each category of tasks.

*Initial case preparation*: Movants request compensation for 79.75 hours of initial case preparation. EPA argues that Movants' billing records are vague and urges us to award fees for only 20 hours. We agree with EPA. Movants' "generic" time records—e.g., "[r]eview[ing] case materials," and "[r]eview of key strategy issues and mercury materials," each for eight hours—"are inadequate to meet a fee applicant's

heavy obligation to present well-documented claims." *Role Models Am., Inc.*, 353 F.3d at 971 (internal quotation marks omitted). Seeking to remedy this lack of specificity, Movants have submitted declarations explaining that the attorneys were working to "comprehend the scientific, factual and legal issues that were central to the case," and listing some specific materials read. Kanji Reply Decl. ¶ 40. Although such declarations can offer some degree of support, *see In re Segal*, 145 F.3d 1348, 1353 (D.C. Cir. 1998) (per curiam), they carry significantly less weight than specific contemporaneous records and fail to establish with the requisite "high degree of certainty," *Role Models Am., Inc.*, 353 F.3d at 970 (internal quotation marks omitted), that all the requested hours were reasonable. We shall thus reduce the compensable hours to the 20 EPA suggests.

*Intervention motion*: Movants request fees for 35 hours of partner time spent on their ultimately unopposed motion to intervene. Urging us to award compensation for only 15 hours, EPA insists that Movants' request is excessive for an unopposed motion and that the work should have been done by attorneys billing at lower rates. We agree partly with EPA and partly with Movants. Contrary to EPA, the fact that the motion was ultimately unopposed is not dispositive because the lack of opposition was unforeseeable at the time the motion to intervene was filed. *See API*, 72 F.3d at 912 ("It is not necessary that a fee-petitioning client and its attorney have acted with the 20/20 acuity of hindsight in developing their arguments in order to collect attorneys' fees."). In his declaration, Tribal Intervenors' counsel states that he asked EPA counsel whether the agency would oppose the Tribes' motion to intervene, and counsel "indicated that the United States would not be in a position to make a decision regarding the motion until after it was filed." Kanji Reply Decl. ¶ 32. EPA does not challenge this representation. With regard to

EPA's second point, Movants explain that their law firm, Kanji & Katzen, used a partner for the motion because the associates were "extremely busy." Kanji Reply Decl. ¶ 33. This justification is entirely unacceptable. Indeed, we suspect that had the firm been charging a private client for these hours, it would have billed the partner time at the hourly rate of the "extremely busy" associates. The taxpayers are surely entitled to the same courtesy. Accordingly, we shall award compensation of 25 hours, the midpoint between what the parties each believe was the value of the work performed.

*Administrative proceedings*: Movants request compensation for 36.5 hours spent preparing comments in pre-litigation administrative proceedings. EPA argues that time spent in administrative proceedings is never compensable. But we need not resolve this dispute because Movants' administrative work—challenging an ancillary regulation—had nothing to do with their efforts as intervenors, the only activity that entitles them to fees. *See New Jersey*, 663 F.3d at 1284 (explaining that Tribal Movants are entitled to fees for their "role as intervenors," and distinguishing that from "their role as petitioners"); *see also API*, 72 F.3d at 913 (denying "fees [that] are not sufficiently connected to the litigation at issue to require the taxpayers to reimburse them"). Accordingly, we shall deny this portion of Movants' request.

*Scheduling and coordinating with other parties*: Movants seek fees for 29 hours spent on the briefing schedule, docketing statement and statement of issues, and coordinating with other parties as to these matters. EPA believes that only 15 hours are justified. As is the case with many of Movants' billing records, the records regarding these activities lack the specificity needed not only to justify the full amount sought for these simple tasks, but also to assure us that no duplication

occurred between Movants' efforts and those of the petitioners. *See Role Models Am., Inc.*, 353 F.3d at 972 ("Duplication of effort is another basis on which the hours seem excessive." (alteration and internal quotation marks omitted)). Unable to ascertain that more than the 15 hours EPA suggests were reasonably expended, we shall award compensation accordingly.

*Merits briefing*: Movants request compensation for 578.75 hours—approximately fourteen weeks of attorney time—for preparing their opening and reply briefs. EPA insists that the request is excessive and that compensation for "at most" 300 hours is appropriate. Updated Opp. 12. We agree that the request is patently excessive. To begin with, Movants played a "narrow" role in the litigation, *New Jersey*, 663 F.3d at 1283 (internal quotation marks omitted), focusing only on whether EPA's regulations abridged tribal fishing rights. Such a focused contribution, though important, should have taken substantially less time. *See API*, 72 F.3d at 916 (deducting hours to reflect "focused challenge" fee-seeking party mounted). Yet Movants seek reimbursement for far more hours than we have awarded to petitioners responsible for briefing an array of arguments. *See, e.g.*, *Wilkett v. ICC*, 844 F.2d 867, 877 (D.C. Cir. 1988) (allowing 300 hours for merits briefing given detailed itemization of billed hours); *API*, 72 F.3d at 917 (awarding, after reduction, 139 hours for lead petitioners' opening and reply briefs). Moreover, Movants' billing records brim with entries like "[c]ontinue draft of brief; research re same" (27.5 hours over three days), "[c]ontinue revisions of draft mercury brief" (4 hours), "[c]ontinue drafting/revising of Opening Brief" (8.5 hours), "[c]ontinue drafting/ revising of mercury brief" (7.25 hours), "[c]ontinue draft of mercury brief" (9.25 hours), "[r]eview of and revisions to Opening Brief" (14 hours), "[r]esearch and brainstorm reply brief issues" (7.25 hours), "[r]esearch

mercury reply brief issues" (14.25 hours over two days), "[r]esearch reply brief issues" (5.25 hours), "[r]esearch and draft reply brief" (9 hours), and "[d]raft reply brief" (22.25 hours over two days). When used to describe hundreds of hours of work, such entries are "inadequate to meet a fee applicant's heavy obligation to present well-documented claims," let alone to establish why the narrow issue the Tribes addressed required such an extraordinary number of hours. *See Role Models Am., Inc.*, 353 F.3d at 971 (finding inadequate entries like "[r]esearch and writing for appellate brief"). Revealing just how excessive this request is, Movants seek compensation for 73.75 hours evaluating EPA's brief, only twenty-four pages of which addressed their arguments, and another 73 hours spent on standing, preparing detailed declarations from "each Treaty Tribe," Albright Decl. ¶ 2, even though Movants only needed to show that one tribe had standing, *see, e.g.*, *Rumsfeld v. Forum for Academic & Inst. Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement."). For all these reasons, we shall award reimbursement for 25% of the hours requested, i.e., 144.7 hours.

*Joint appendix and Rule 28(j) letter*: Movants request 33.5 hours for time spent assuring that their materials were properly represented in the joint appendix, as well as 3 hours for preparing a Rule 28(j) letter they filed before oral argument, *see* Fed. R. App. P. 28(j). EPA objects to the hours spent on the joint appendix, arguing that they are excessive and that the supporting descriptions are overly vague. Because the descriptions are indeed generic, e.g., "[p]reparation of joint appendix materials," "[c]ompilation of joint appendix materials," and, twice, "[c]ompilation of joint appendix," we cannot be sure that Movants avoided duplication of effort between the various petitioners working

on the document, much less that all of the requested hours were reasonably expended for these ministerial tasks. Accordingly, as EPA requests, we shall deduct 16.5 hours from Movants' request and award compensation for 20.

*Oral argument*: Movants seek compensation for 121 hours preparing for oral argument. Although Movants did not participate in oral argument—ten days before the scheduled date this court issued an order limiting argument to certain other issues—they reasonably expected to, so some preparation was appropriate. EPA agrees, but argues that the number of hours requested is exorbitant. EPA is correct. Over three weeks of attorney time is grossly excessive given not only that Movants knew ten days before argument that they would have no role, but also that during the time Movants were appropriately preparing for oral argument, they, unlike petitioners, had to focus solely on the interaction between the challenged rules and tribal fishing rights. *See Wilkett*, 844 F.2d at 878 (72.9 hours of oral argument preparation "plainly excessive"); *API*, 72 F.3d at 917 (126.25 hours of oral argument preparation excessive). Accordingly, we shall award reimbursement for 25% of the hours requested, i.e., 30.25 hours.

*Post-decision activities*: Movants request compensation for 37 hours of post-decision work, including participation in the motion for expedited issuance of the mandate and commenting on motions opposing rehearing en banc and certiorari. EPA argues that the request is vague and excessive and should be reduced to 20 hours. Because the descriptions generically discuss "review[ing]" various things, e.g., "[r]eview and address issues related to Motion to Expedite" and "[r]eview petitions for rehearing and rehearing *en banc*," Movants have failed to meet their burden to show that all

hours requested were reasonably expended and avoided duplication. We shall therefore make the requested reduction.

*Attorney fees*: Movants seek compensation for 227.5 hours spent on their motion for fees, including 42.5 hours for the initial motion and 185 hours for their efforts responding to EPA's opposition. EPA argues that these hours are "grossly excessive," Updated Opp. 17, pointing out that we have previously treated 69 hours for fee work as "perhaps excessive for a fee petition of relatively ordinary difficulty," *Sierra Club v. EPA*, 769 F.2d 796, 812 (D.C. Cir. 1985). Although, as our earlier opinion in this case readily demonstrates, Movants' request was hardly one of "ordinary difficulty," Movants have nonetheless failed to demonstrate that the undertaking was so herculean that it required nearly six weeks of attorney time. Given this, we shall award compensation for the 91 hours suggested by EPA.

In sum, Movants reasonably expended 365.95 hours on the litigation. Multiplying this by $305.125 per hour, we award Movants $111,660.49 in compensation for attorney time. We also award Movants the $3,186.50 in costs they seek and that EPA does not contest.

*So ordered.*

BROWN, *Circuit Judge*, concurring: An old song laments that "nothing from nothing leaves nothing."  BILLY PRESTON, *Nothing from Nothing,* on THE KIDS AND ME (A&M Records 1974).  Logically, it should follow that nothing plus nothing leads to the same result.  But, in the rarefied atmosphere of attorneys' fees litigation and in light of this Court's divided decision in *New Jersey v. EPA,* 663 F.3d 1279 (D.C. Cir. 2011), nothing *times* nothing is apparently worth a great deal.  Since I believe that no matter how carefully we parse the separate parts of the intervenors' request, anything above zero is excessive, I hope the en banc court will revisit this question in the near future.  Meanwhile, under compulsion of our earlier case, I reluctantly concur.